AO 106 (Rev. 04/10)  Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT
### for the
Western District of Washington

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| 4 Facebook Accounts as more fully described in Attachment A | ) ) ) ) |

Case No.   MJ20-201

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
Four Facebook Accounts as more fully described in Attachment A, incorporated herein by reference.

located in the _____Western_____ District of _____Washington_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 2841, 846 | Distribution of controlled substances, conspiracy |
| 21 U.S.C. § 960 and 963 | Importation of controlled substances, conspiracy |

The application is based on these facts:

✓ See Affidavit of Special Agent Matthew Zito continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

_____
*Applicant's signature*

Matthew Zito, Special Agent FBI
*Printed name and title*

◉ The foregoing affidavit was sworn to before me and signed in my presence, or
○ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date:   04/22/2020

_____
*Judge's signature*

City and state:  Seattle, Washington

Brian A. Tsuchida, Chief United States Magistrate Judge
*Printed name and title*

1    **AFFIDAVIT OF MATTHEW ZITO**

2    STATE OF WASHINGTON        )
                                )    ss
3    COUNTY OF KING             )

4

5        I, MATTHEW ZITO, a Special Agent with the Federal Bureau of Investigation,

6    Seattle, Washington, having been duly sworn, state as follows:

7                        **AFFIANT BACKGROUND**

8        1.      I am a Special Agent ("SA") for the Federal Bureau of Investigation

9    ("FBI") and have been so employed since June 2012. I am currently assigned to the

10   Seattle FBI Safe Streets Task Force ("SSTF")/High Intensity Drug Trafficking Area

11   ("HIDTA") Task Force. The SSTF/HIDTA squad is a task force comprised of FBI agents

12   and officers of the Seattle Police Department ("SPD") assigned to investigate the criminal

13   activities of criminal street gangs and large-scale narcotics trafficking organizations.

14   Prior to my assignment with the Seattle SSTF/HIDTA, I was assigned to the Los Angeles

15   FBI, Los Angeles Strike Force ("LASF"), a task force comprised of agents and officers

16   from federal, state, and local agencies assigned to investigate large-scale narcotics

17   trafficking organizations. I have also previously been assigned to the Las Vegas division

18   of the FBI, where I was assigned to a HIDTA Task Force investigating the drug

19   trafficking activities of organized crimes groups associated with Mexican cartels.

20       2.      Since completing the FBI Academy in November 2012, I have participated

21   in numerous narcotics trafficking and money laundering investigations. I have

22   participated in investigations involving the identification of co-conspirators through

23   analysis of telephone records and bills, financial records, photographs, and other

24   documents. I have directed and assisted in the handling of confidential sources to gather

25   intelligence through various methods, including through consensual recordings made

26   during meetings with targets. I have executed search warrants for controlled substances in

27   residences, storage units, and vehicles.  I have conducted investigations in which I have

28   used Global Positioning System ("GPS") information to locate and track persons who are

AFFIDAVIT OF SA ZITO - 1
2016R01231

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-380

1 the subjects of criminal investigations, and I have used physical surveillance in

2 conjunction with GPS tracking to monitor the activities of persons under investigation.

3       3.     I have drafted search warrants and sought other legal process to obtain

4 information from providers of a variety of electronic services, including cellular

5 telephone service providers and digital communications providers such as messaging and

6 email service providers. I have written affidavits in support of court-authorized federal

7 warrants and orders for GPS tracking of telephones, pen register/trap and trace orders,

8 and search warrants. I have led investigations involving the use of Title III wiretaps in

9 order to intercept the communications of target subjects and have authored Title III

10 wiretap affidavits to further those investigations. I have testified in grand jury

11 proceedings, written investigative reports, and conducted and participated in numerous

12 interviews of drug traffickers and money launderers of various roles within drug

13 organizations, which has provided me with a greater understanding of the methods by

14 which drug trafficking organizations operate.

15       4.     I am an investigative law enforcement officer of the United States within

16 the meaning of 18 U.S.C. § 2510(7). As such, I am empowered to conduct investigations

17 of, and to make arrests for, violations of the Controlled Substance Act, Title 21, United

18 States Code, Section 801 *et seq.*, and related offenses.

19       5.     The facts set forth in this Affidavit are based on my own personal

20 knowledge; knowledge obtained from other individuals during my participation in this

21 investigation, including other law enforcement personnel; review of documents and

22 records related to this investigation; communications with others who have personal

23 knowledge of the events and circumstances described herein; and information gained

24 through my training and experience. Because this Affidavit is submitted for the limited

25 purpose of establishing probable cause in support of the application for a search warrant,

26 it does not set forth each and every fact that I or others have learned during the course of

27 this investigation.

28

AFFIDAVIT OF SA ZITO - 2
2016R01231

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-380

6. Based upon my experience and training with the FBI as well as conversations I have had with other agents and law enforcement officers who specialize in narcotics investigations, including investigations into the laundering of narcotics trafficking proceeds, I am familiar with the methods, tactics, and techniques utilized by narcotics trafficking/money laundering organizations.  I have spoken with federal agents, as well as other law enforcement officers, about their experiences and the results of their investigations and interviews. Through my conversations with these agents and other law enforcement officers, I am knowledgeable in the methods and modes of narcotics trafficking/money laundering operations.

7. Based on my training and experience, I know narcotics traffickers often require the use of one or more communication facilities to negotiate times, places, schemes, and manners for importing, possessing, concealing, manufacturing, and distributing controlled substances and for arranging the disposition of proceeds from the sale of controlled substances. I know international and domestic narcotics trafficking organizations often depend on maintaining timely long-distance and local connections between original sources of supply and those down the organizational chain. Narcotics traffickers utilize a variety of communication methods, including telephone communications, encrypted and unencrypted messaging applications, and email.

8. Among other techniques, I know that drug traffickers sometimes use Facebook Messenger to conduct such communications.  I also know narcotics traffickers often use fraudulent information to subscribe to communication facilities, including Facebook services.  I also know narcotics traffickers will use multiple communication accounts at one time, and also frequently change communication facilities, all in an attempt to thwart law enforcement efforts to intercept their communications.

## INTRODUCTION AND PURPOSE OF AFFIDAVIT

9. I make this affidavit in support of an application for a search warrant for information stored at premises controlled by Facebook, Inc., a social networking company headquartered at 1601 Willow Road, Menlo Park, California 94025 (hereafter,

AFFIDAVIT OF SA ZITO - 3
2016R01231

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-380

Facebook or the "PROVIDER")[1], associated with the accounts identified as the following:

       a.    Account number 100012398678974 ("**TARGET FACEBOOK ACCOUNT #1**"), believed to be used by MARELVIS JACQUELIN AHUMADA GARCES ("AHUMADA GARCES");

       b.    Account number 100014362298473 ("**TARGET FACEBOOK ACCOUNT #2**"), believed to be used by AHUMADA GARCES;

       c.    Account number 100007507727611 ("**TARGET FACEBOOK ACCOUNT #8**"), believed to be used by REFUA KABUTA ("KABUTA"); and

       d.    Account number 100006226988117 ("**TARGET FACEBOOK ACCOUNT #9**"), believed to be used by NABURA TEARINIMAN ("TEARINIMAN") (collectively referred to as the "SUBJECT ACCOUNTS").

All more particularly described in Attachment A to this application.

       10.    The SUBJECT ACCOUNTS are identified in the following paragraphs and in Attachment A to the search warrant application. This affidavit is made in support of an application for a warrant under Fed. R. Crim. P. 41, 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), 2703(c)(1)(A) and 2703(d)[2] to require the PROVIDER to disclose to the government

---

[1] Because this Court has jurisdiction over the offense(s) being investigated, it may issue the warrant to compel the PROVIDER pursuant to 18 U.S.C. §§ 2703(a), (b)(1)(A), (c)(1)(A). See 18 U.S.C. §§ 2703(a) ("A governmental entity may require the disclosure by a provider . . . pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure . . . by a court of competent jurisdiction") and 2711 ("the term 'court of competent jurisdiction' includes -- (A) any district court of the United States (including a magistrate judge of such a court) or any United States court of appeals that -- (i) has jurisdiction over the offense being investigated; (ii) is in or for a district in which the provider of a wire or electronic communication service is located or in which the wire or electronic communications, records, or other information are stored; or (iii) is acting on a request for foreign assistance pursuant to section 3512 of this title").

[2] The government is seeking non-content records pursuant to 18 U.S.C. § 2703(d). To obtain the basic subscriber information, which does not contain content, the government needs only a subpoena. See 18 U.S.C. § 2703(c)(1), (c)(2). To obtain additional records and other information--but not content--pertaining to subscribers of an electronic communications service or remote computing service, the government must comply with the dictates of section 2703(c)(1)(B), which requires the government to supply specific and articulable facts showing that there are reasonable grounds to believe that the records or other information sought are relevant and material to an ongoing criminal investigation in order to obtain an order pursuant to 18 U.S.C. § 2703(d). The requested warrant calls for both records containing content (see Attachment B paragraph II.10.a.) as well as subscriber records and other records and information that do not contain content (see Attachment B paragraph II.10.b.).

AFFIDAVIT OF SA ZITO - 4

2016R01231

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-380

1   copies of the information (including the content of communications) described in Section

2   I of Attachment B. Upon receipt of the information described in Section I of Attachment

3   B, law enforcement agents and/or individuals assisting law enforcement and acting at

4   their direction will review that information to locate the items described in Section II of

5   Attachment B. Attachments A and B are incorporated herein by reference.

6         11.    As described more fully below, I respectfully submit there is probable

7   cause to believe that the information associated with the SUBJECT ACCOUNTS

8   constitutes evidence, contraband, fruits, or instrumentalities of criminal violations of Title

9   21, United States Code, Sections 841(a)(1), 846 (distribution of controlled substances and

10   conspiracy), 960 and 963 (importation of controlled substances and conspiracy)

11   committed by AHUMADA GARCES and others.

12         12.    The facts set forth in this affidavit are based upon my personal

13   observations, my training and experience, and information obtained from other agents

14   and witnesses. This affidavit is intended to show merely that there is sufficient probable

15   cause for the requested warrant and does not purport to set forth all of my knowledge of

16   or investigation into this matter. Unless specifically indicated otherwise, all

17   conversations and statements described in this affidavit are related in substance and in

18   part only.

19               **BACKGROUND KNOWLEDGE RE: FACEBOOK**

20

21         13.    I am aware from my experience and training, and consultation with other

   investigators, of the following information about Facebook:

22

23         14.    Facebook owns and operates a free access social networking website of the

24   same name that can be accessed at http://www.facebook.com. Facebook allows its users

25   to establish accounts with Facebook, and users can then use their accounts to share

26   written news, photographs, videos, and other information with other Facebook users, and

27   sometimes with the general public.

28

AFFIDAVIT OF SA ZITO - 5
2016R01231

15.     Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact email addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

16.     Facebook's terms of use generally requires users to provide true names and other identifiers, and generally prohibits individuals from creating multiple personal accounts. However, Facebook does not appear to meaningfully enforce these requirements. I know from my training and experience that many illicit Facebook users (and even some legitimate users) will create, maintain and use multiple accounts under multiple names.

17.     Facebook assigns a user identification number to each account.

18.     I know from speaking with other law enforcement that "cookies" are small files placed by a server (such as those used by Facebook) on a device to track the user and potentially verify a user's authentication status across multiple sites or webpages. This cookie could be unique to a particular account (e.g., the Facebook account) or to a given device (e.g., the particular phone used to access the Facebook account). The next time a user visits a particular site or server, the server will ask for certain cookies to see if the server has interacted with that user before. Cookies can also be used to determine "machine cookie overlap," or multiple accounts that have been accessed by the same individual machine (e.g., two Facebook accounts that have been accessed on the same phone). The machine cookie overlap thus allows Facebook to track accounts that are "linked" to each other because the same user account (username on a computer) on the same device accessed multiple Facebook accounts. This can identify either multiple Facebook accounts used by the same person or used by different people sharing the same

AFFIDAVIT OF SA ZITO - 6
2016R01231

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-380

user account and device. In either case, the machine cookie overlap means that the users of the linked accounts are the same person or two people in close proximity to each other (by virtue of them using the same device).

19.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

20.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

21.     Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic

AFFIDAVIT OF SA ZITO - 7
2016R01231

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-380

locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile. Facebook has a Photos application, where users can upload an unlimited number of albums and photos. For Facebook's purposes, a user's "Photoprint" includes all photos uploaded by that user that have not been deleted and other items. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

22.     Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to email messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a "Chat" feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

23.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

24.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well

AFFIDAVIT OF SA ZITO - 8
2016R01231

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-380

as webpages or content on third party (i.e., non Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

25.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

26.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

27.     Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

28.     Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

29.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

30.     Some Facebook pages are affiliated with groups of users, rather than one individual user.  Membership in the group is monitored and regulated by the administrator or head of the group, who can invite new members and reject or accept requests by users to enter.  Facebook can identify all users who are currently registered to a particular group and can identify the administrator and/or creator of the group. Facebook uses the term "Group Contact Info" to describe the contact information for the

AFFIDAVIT OF SA ZITO - 9
2016R01231

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-380

group's creator and/or administrator, as well as a PDF of the current status of the group profile page.

31.     Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile:  profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

32.     Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address.  These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action.  For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

33.     Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

AFFIDAVIT OF SA ZITO - 10
2016R01231

34.    Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.  I believe such information is likely to constitute evidence of the drug trafficking crimes currently under investigation.

## SUMMARY OF PROBABLE CAUSE

35.    In approximately September 2016, the U.S. Coast Guard Investigative Service ("CGIS") began conducting an investigation into the narcotics smuggling activities of MARELVIS JACQUELIN AHUMADA GARCES ("AHUMADA GARCES"). In approximately January 2019, the Federal Bureau of Investigation ("FBI") joined the investigation and began working cooperatively with CGIS and other agencies. The investigation to date has determined that AHUMADA GARCES uses Facebook accounts, including the SUBJECT ACCOUNTS, to recruit and coordinate with professional mariners to smuggle controlled substances from South and Central America to North America and Europe via commercial cargo container vessels.

### Motor Vessel ("M/V") CAP JACKSON Seizure and Initiation of Investigation

36.    On September 3, 2016, the Royal Canadian Mounted Police ("RCMP") seized approximately 196 kilograms of cocaine that had been smuggled to British Columbia on board the container ship Motor Vessel ("M/V") CAP JACKSON. The seized cocaine had been loaded into duffel bags and Everlast brand punching bags, attached to make-shift buoys affixed with a strobe light, and dropped into the water when the M/V CAP JACKSON left Fraser Docks, Surrey, British Columbia, Canada. A pilot boat noticed the package, retrieved it, and turned it over to Canadian authorities. Prior to the seizure, the M/V CAP JACKSON's previous port of call was Seattle, Washington. The vessel's next port of call was Oakland, California.

AFFIDAVIT OF SA ZITO - 11
2016R01231

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-380

37. After the seizure in Canada, on September 7, 2016, U.S. law enforcement officials boarded the M/V CAP JACKSON in Oakland, California. During that operation, investigators conducted interviews of crewmembers aboard the M/V CAP JACKSON at the time of the seizure. A crewmember witness who was interviewed and who admitted bringing a package onboard the M/V CAP JACKSON in Colombia informed investigators that REFUA KABUTA aka REBUA KABUTA ("KABUTA") and at least one other mariner had attempted to lower the package later determined to be the seized cocaine to an awaiting vessel when the M/V CAP JACKSON departed the Fraser River in British Columbia, Canada.

38. KABUTA was identified by investigators as a professional mariner from the Republic of Kiribati who was a crewmember of the M/V CAP JACKSON at the time of the seizure. KABUTA was interviewed by investigators during the September 7, 2016 operation in Oakland, California. KABUTA produced his cellular phone, which was searched by investigators. The search of KABUTA's phone led investigators to identify a Colombian telephone number 57-3013615307 labeled as "Kimmy." I know the prefix "57" for a phone number is the country code for phone numbers in the nation of Columbia, a source-country for cocaine.

39. Also located in KABUTA's mobile telephone was the British Columbia telephone number (604) 704-1178. A later analysis of the calling data from KABUTA's phone showed that KABUTA's phone communicated with 57-3013615307 on September 2, 2016, prior to the attempted at-sea transfer of the cocaine. KABUTA's phone also communicated with the telephone number (604) 704-1178 on September 2 and 3, 2016.

40. On October 8, 2016, investigators assisted U.S. Customs and Border Protection ("CBP") with the secondary inspection of KABUTA at Los Angeles International Airport as he traveled to Kiribati through the United States. During the secondary inspection of KABUTA, CBP officers located in KABUTA's personal

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-380

belongings a mini composition notebook with "R Kabuta Notebook" handwritten on the cover. The back cover of the notebook contained a handwritten notation of the British Columbia mobile telephone number (604) 704-1178.

41.     With the assistance of RCMP, the telephone number (604) 704-1178 was identified as being subscribed to by JUAN MARCIAL RODRIGUEZ MONTANO ("RODRIGUEZ MONTANO"), who investigators determined had traveled to Colombia from Canada near the time of the seizure. Travel records for RODRIGUEZ MONTANO revealed that he departed from Vancouver international Airport, Richmond, BC on July 19, 2016, traveled to Colombia, and returned to Canada just prior to the M/V CAP JACKSON seizure, arriving at Vancouver International Airport on September 1, 2016. Canadian phone records also showed that, on the night the cocaine was dropped into the water, the phone was in the vicinity of a marina near the cocaine drop-off site.

42.     Also located in KABUTA's notebook was the handwritten email address BRAYLIN777@hotmail.com with the name "Jackkie" written below it. As detailed below, this investigation has shown that AHUMADA GARCES has identified her email address as BRAYLIN777@hotmail.com on more than one occasion in the past. An unlabeled Colombian telephone number, 57-3008717105 was in KABUTA's mobile telephone along with RODRIGUEZ MONTANO's number.

43.     Also located in KABUTA's notebook were multiple handwritten Western Union money transfer control numbers ("MTCN") for individuals in names other than his own. The Western Union receipts were from multiple senders and to multiple receivers in Kiribati, New Zealand, and Australia. All of the Western Union receipts were from the country of Panama.  According to KABUTA's notebook, two of the MTCN's, 106-360-6406 and 471-152-2649, were associated to a "Rawata Itinneita" as the money recipient. Western Union information obatined by investigators showed both MTCN's were

AFFIDAVIT OF SA ZITO - 13
2016R01231

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-380

initiated on August 29, 2016, by an individual from two separate locations in Panama

City, Panama and were paid to a RATAWA ITINNEITA ("ITINNEITA") in Kiribati.

      44.    Investigators subpoenaed additional transaction information from Western

Union and, according to Western Union, ITINNEITA also received a wire transfer from

AHUMADA GARCES. Other information provided by Western Union revealed that

AHUMADA GARCES conducted two Western Union wire transfers where she indicated

her email address was BRAYLIN777@hotmail.com.

## M/V CAP JERVIS SEIZURE

      45.    On March 17, 2017, investigators learned that the Canada Border Services

Agency ("CBSA") conducted a boarding of the M/V CAP JERVIS while in port in

British Columbia, Canada. The CBSA investigation revealed that two crewmembers,

MAURI BAAKEUA ("BAAKEUA") and NABURA TEARINIMAN

("TEARINIMAN") went ashore while in Cartagena, Colombia. The CBSA investigation

included an examination of the cellular phones possessed by BAAKEUA and

TEARINIMAN. BAAKEUA's phone contained photographs of wire transfers from

Panama City to two accounts in Kiribati. BAAKEUA offered several explanations for the

wire transfers that were inconsistent before ending his interview. Investigators were able

to retrieve phone numbers from TEARINIMAN's mobile telephone, which included the

Columbian telephone number 57-3013615307 previously found in KABUTA's phone

under the contact name "Kimmy".

      46.    On March 22, 2017, U.S. law enforcement consisting of officers and agents

of CBP, CGIS, and RCMP conducted a boarding of the M/V CAP JERVIS while the

vessel was in port in Oakland, California. During the boarding, investigators conducted

interviews of crewmembers, including TEARINIMAN. During the interview,

TEARINIMAN told investigators that he was a motorman onboard the M/V CAP

JERVIS, had been employed on commercial vessels for fifteen years, and that while he

AFFIDAVIT OF SA ZITO - 14
2016R01231

was in Cartagena, Colombia, he had gone to the "Los Angeles disco" with BAAKEAU. According to CHS information discussed in further detail below, investigators have learned that AHUMADA GARCES uses the Angeles Bar Club, a brothel in Cartagena, Colombia, as a venue to meet with and recruit mariners for her narcotics smuggling organization.

47.     On December 15, 2017, investigators learned that on December 12, 2017, the M/V CAP JERVIS was searched in Valencia, Spain after its arrival and that officials discovered a container whose container seal serial number did not match the manifest. When the container was searched, multiple bags wrapped in rope were discovered stacked inside the container. The bags wrapped in rope were found to contain 520 kilograms of cocaine.

**AHUMADA GARCES' Use of email account Braylin777@hotmail.com**

48.     On November 24, 2018, AHUMADA GARCES was traveling to Panama City, Panama from Barranquilla, Colombia via commercial air flight. Upon entry into Panama, AHUMADA GARCES was interviewed by Panamanian authorities. During the interview, AHUMADA GARCES provided her email address as BRAYLIN777@hotmail.com . She also stated to interviewing authorities that she had been a resident of Panama for eleven years, and provided two Panamanian addresses, one of which was located in Panama City.

**Use of Confidential Informant**

49.     In the course of the investigation, investigators developed an informant (hereafter, the "Confidential Human Source' or "CHS").[3]  The CHS has made admissions against their penal interest, and to the best of my knowledge has provided truthful and

---

[3] Add any known baggage for the CHS – criminal history, etc. – and the CHS's motivation – avoiding charges, money, whatever – for working with law enforcement here.

AFFIDAVIT OF SA ZITO - 15

2016R01231

reliable information that has been corroborated by other investigative means, some of which are outlined in this affidavit.

50.     The CHS admitted to law enforcement that he/she had been recruited to participate in smuggling narcotics onto cargo container shipping vessels by AHUMADA GARCES. The CHS admitted involvement in a smuggling event, orchestrated by AHUMADA GARCES, involving the smuggling of cocaine from Colombia to Mexico. The CHS informed investigators that during the Mexico smuggling event, AHUMADA GARCES contacted the CHS via TARGET FACEBOOK ACCOUNT 1 during and after the CHS made the transfer at sea of the narcotics intended for Mexico. The CHS said that AHUMADA GARCES hired someone to send money to the CHS's family as payment for the smuggling event. The CHS further advised investigators that in November 2017, the CHS began communicating with AHUMADA GARCES via TARGET FACEBOOK ACCOUNT 2.

51.     The CHS informed investigators that they were initially recruited by BAAKEAU, who was aboard the same vessel as the CHS at the time. The CHS said that while in Cartagena, Colombia, the CHS and BAAKEAU were taken to a club called the "Los Angeles" in an unmarked taxi waiting for them at the port. Inside the club, BAAKEAU introduced the CHS to a cocaine supplier, who asked the CHS to bring cocaine to Mexico. The supplier gave the CHS a mobile phone for use during the smuggling event. The CHS admitted to being involved in smuggling 20-30 kilograms of cocaine in Everlast punching bags from Cartagena, Colombia to Manzanillo, Mexico. The CHS said the CHS was paid approximately $6,000 USD, which had been transmitted to the CHS's spouse via Western Union. The CHS told investigators that as their vessel departed Cartagena, a small boat pulled alongside their vessel and, with BAAKEAU, the CHS lowered a rope to the small boat. An unknown individual in the small boat attached the Everlast Punching bags to the line and they were hauled onto the ship. The CHS said

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-380

1  that they hid the cocaine in the steering gear room and, when the ship departed

2  Manzanillo, Mexico, they dropped the cocaine off the stern of the vessel. The bags had

3  small strobe lights attached. The CHS threw the phone provided by the supplier at the

4  "Los Angeles" club over the side of the vessel as directed by the supplier.

5          52.     Based on the foregoing, I believe that KABUTA conspired with

6  AHUMADA GARCES to smuggle the narcotics seized September 3, 2016 onto and off

7  the M/V CAP JACKSON, and that KABUTA is involved in orchestrating payment to

8  members of AHUMADA GARCES' organization. Furthermore, based on the

9  identification of telephone number 57-3013615307 in TEARINIMAN's phone, his

10  admission to visiting the "Los Angeles disco" with BAAKEAU in Cartagena, Colombia,

11  and the seizure of narcotics from the vessel he was employed on, I believe

12  TEARINIMAN was also involved in narcotics smuggling orchestrated by AHUMADA

13  GARCES.

14  **AHUMADA GARCES' Use Of Social Media In Furtherance Of Her Narcotics**

15  **Trafficking Activity**

16          53.     Investigators have identified several Facebook social media profiles

17  believed to be used by AHUMADA GARCES. While reviewing the publicly viewable

18  friends lists for the social media profiles, investigators determined that TARGET

19  FACEBOOK ACCOUNT 8 appeared on the friends list for both TARGET FACEBOOK

20  ACCOUNT 1 and TARGET FACEBOOK ACCOUNT 2. The friends list for both

21  TARGET FACEBOOK ACCOUNT 1 and TARGET FACEBOOK ACCOUNT 2

22  consists primarily of profiles that appear to belong to Kiribati mariners; for example,

23  investigators also determined that the friends list for TARGET FACEBOOK ACCOUNT

24  1 included the name TEISI BURATAAKE ("BURATAAKE"). BURATAAKE is a

25  professional mariner from Kiribati who, according to open source research, was one of

26  nine Kiribati crewmembers aboard the M/V RIO DE JANEIRO arrested by Italian law

AFFIDAVIT OF SA ZITO - 17

2016R01231

1   enforcement on October 20, 2016, in connection with the attempt to smuggle 385

2   kilograms of cocaine from South America into Italy.

3   **Prior Court Orders**

4   54.    On December 20, 2017, investigators sought and obtained a federal search

5   warrant for two Facebook accounts associated with AHUMADA GARCES. The warrant

6   was signed under MJ17-526 by the Honorable Brian A. Tsuchida, U.S. Magistrate Judge,

7   U.S. District Court for the Western District of Washington. The search warrant

8   authorized the search of TARGET FACEBOOK ACCOUNT 1 and TARGET

9   FACEBOOK ACCOUNT 2. On December 21, 2017, the warrant was served on the

10  Facebook via the Facebook's Law Enforcement Portal Website. In response, on

11  December 22, 2017, Facebook provided information associated with TARGET

12  FACEBOOK ACCOUNT 1 and, on January 8, 2018, provided information associated

13  with TARGET FACEBOOK ACCOUNT 2.

14  55.    On April 27, 2018, investigators sought and obtained a federal search

15  warrant for five additional Facebook accounts associated with AHUMADA GARCES.

16  The warrant was signed under MJ18-197 by the Honorable Mary Alice Theiler, U.S.

17  Magistrate Judge, U.S. District Court for the Western District of Washington. The search

18  warrant authorized the search of TARGET FACEBOOK ACCOUNT 3, TARGET

19  FACEBOOK ACCOUNT 4, TARGET FACEBOOK ACCOUNT 5, TARGET

20  FACEBOOK ACCOUNT 6, and TARGET FACEBOOK ACCOUNT 7. On April 27,

21  2018, the warrant was served on Facebook via the Facebook's law enforcement portal

22  website. In response, on May 18, 2018, the Facebook provided information associated

23  with TARGET FACEBOOK ACCOUNT 3, TARGET FACEBOOK ACCOUNT 4,

24  TARGET FACEBOOK ACCOUNT 5, TARGET FACEBOOK ACCOUNT 6, and

25  TARGET FACEBOOK ACCOUNT 7.

AFFIDAVIT OF SA ZITO - 18
2016R01231

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-380

56.     On December 3, 2019, investigators sought and obtained an order pursuant to 18 U.S.C. 2703(d) directing Facebook to disclose records and other information associated with the SUBJECT ACCOUNTS. The order was signed under MJ19-320 by the Honorable Mary Alice Theiler, U.S. Magistrate Judge, U.S. District Court for the Western District of Washington. The order was served on Facebook via Facebook's online law enforcement portal on December 4, 2019. In response, on December 19, 2019, investigators received a production of records from Faceook related to the SUBJECT ACCOUNTS. Included in the Faceook's response was information detailing other accounts the SUBJECT ACCOUNTS communicated with, including dates and times messages were sent or received by the SUBJECT ACCOUNTS, but not including content of the messages.

### Analysis of 2703(d) Returns

57.     I have conducted a review of the information received in response to Order MJ19-320, referenced above, served on the PROVIDER. Regarding the SUBJECT ACCOUNTS, the following observations were made during my analysis.

**Target Facebook Account 1**

58.     **TARGET FACEBOOK ACCOUNT 1** was registered on June 6, 2016, with registration name "Maria Garcia". The email "mariana_kimmy@hotmail.com" is listed as the registered email address associated with **TARGET FACEBOOK ACCOUNT 1**. Information from the PROVIDER indicates that the user has sent "secret conversation" messages, messages encrypted by the PROVIDER.

59.     The response identifies conversation "threads," conversations between **TARGET FACEBOOK ACCOUNT 1** and other accounts, which includes identifying information for the account holders involved in the conversation and the date and time of messages sent in the conversation, but not the content of the conversation.

AFFIDAVIT OF SA ZITO - 19
2016R01231

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-380

60.    For example, **TARGET FACEBOOK ACCOUNT 1** was in communication with **TARGET FACEBOOK ACCOUNT 9**, screen name "Nabura Teariniman," on October 22, 2019. On that date, the following messages were exchanged[4]:

| Author | Account | Sent |
|---|---|---|
| Nabura Teariniman | 100006226988117 (Target Facebook Account 9) | Sent 2019-10-22 01:58:56 |
| Nabura Teariniman | 100006226988117 (Target Facebook Account 9) | Sent 2019-10-22 02:01:21 |
| Maria Garcia | 100012398678974 (Target Facebook Account 1) | Sent 2019-10-22 15:56:25 |
| Maria Garcia | 100012398678974 (Target Facebook Account 1) | Sent 2019-10-22 15:56:57 |
| Nabura Teariniman | 100006226988117 (Target Facebook Account 9) | Sent 2019-10-22 16:40:08 |
| Maria Garcia | 100012398678974 (Target Facebook Account 1) | Sent 2019-10-22 16:40:52 |

61.    Based on my training, experience, and knowledge of this investigation, I believe that the account 100006226988117 referenced above belongs to TEARINIMAN. A review of the publicly viewable information for account 100006226988117 revealed the account holder's screen name as "Nabura Teariniman". According to the profile information, the account subscriber lives in Tarawa, Kiribati. A publicly available photo shows the individual depicted in the profile photo aboard an unidentified cargo container shipping vessel. Profile photographs posted to account 100006226988117 match the photograph of TEARINIMAN's most recent U.S. Non-Immigrant Visa ("NIV") application. TEARINIMAN's NIV application lists Tarawa, Kiribati as his home and South Pacific Marine Services as his employer. Based on the matching profile picture photographs, the publicly viewable account information, and the message exchange

---

[4] Unless specifically designated otherwise, all times noted herein are in Coordinated Universal Time ("UTC").

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-380

above, I believe that AHUMADA GARCES is currently using **TARGET FACEBOOK ACCOUNT 1** to communicate with TEARINIMAN using **TARGET FACEBOOK ACCOUNT 9** about narcotics smuggling.

62.     In addition to the above message thread, **TARGET FACEBOOK ACCOUNT 1** was in communication with **TARGET FACEBOOK ACCOUNT 8**, screen name "Refua Kabuta", from October 10, 2019 until November 5, 2019. During that time period, the following messages were exchanged:

| Author | Account | Sent |
|--------|---------|------|
| Maria Garcia | 100012398678974 (Target Facebook Account 1) | Sent 2019-10-10 17:30:26 |
| Refua Kabuta | 100006226988117 (Target Facebook Account 8) | Sent 2019-10-22 05:09:10 |
| Maria Garcia | 100012398678974 (Target Facebook Account 1) | Sent 2019-10-22 15:55:57 |
| Refua Kabuta | 100006226988117 (Target Facebook Account 8) | Sent 2019-11-01 00:27:12 |
| Refua Kabuta | 100006226988117 (Target Facebook Account 8) | Sent 2019-11-01 00:29:38 |
| Maria Garcia | 100012398678974 (Target Facebook Account 1) | Sent 2019-11-05 05:28:05 |

63.     Based on my training, experience, and knowledge of this investigation, I believe that account 100007507727611 referenced above belongs to KABUTA. A review of the publicly viewable information for account 100007507727611 revealed the account holder's screen name as "Refua Kabuta". According to the profile information, the account subscriber is from Eita, Kiribati and currently living in Tarawa, Kiribati. The account holder is friends with **TARGET FACEBOOK ACCOUNT 1** and **TARGET FACEBOOK ACCOUNT 2**. Profile photographs posted to account 100007507727611 match the photograph of KABUTA's past NIV application. Based on the matching profile picture photographs, the publicly viewable account information, and the message exchange above, I believe that AHUMADA GARCES is currently using **TARGET**

AFFIDAVIT OF SA ZITO - 21
2016R01231

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-380

FACEBOOK ACCOUNT 1 to communicate with KABUTA using **TARGET FACEBOOK ACCOUNT 8**.

64.     Accordingly, based on AHUMADA GARCES's ongoing communication with TEARINIMAN and KABUTA, I believe AHUMADA GARCES is using **TARGET FACEBOOK ACCOUNT 1** to recruit mariners and/or coordinate the transportation of narcotics onboard cargo container shipping vessels.

65.     Furthermore, according to the records provided by the PROVIDER in response to Order MJ19-320, **TARGET FACEBOOK ACCOUNT 1** was in communication with a total of 52 other accounts during the timeframe for which records were provided. Two of the accounts were not able to be located through open source searching.  Of the 50 accounts **TARGET FACEBOOK ACCOUNT 1** was in contact with that were able to be located, 49 of those accounts appear, based on publicly viewable account information, to be used by men from the Republic of Kiribati, men employed in the maritime industry, or both. One of the 50 accounts appeared to used by a female from the Republic of Kiribati.

66.     Based on my training, experience, knowledge of this investigation, and her use of **TARGET FACEBOOK ACCOUNT 1** to communicate with TEARINIMAN and KABUTA as described above, I believe that AHUMADA GARCES also uses **TARGET FACEBOOK ACCOUNT 1** as a means to communicate with others employed in the maritime industry, particularly Kiribati nationals, and to recruit them into her narcotics smuggling organization.

**Target Facebook Account 2**

67.     **TARGET FACEBOOK ACCOUNT 2** was registered on November 30, 2016, with registration name "Mariana Garces." The email "jacktariri@gmail.com" is listed as the registered email address associated with the account.

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-380

68. The response identifies conversation threads between **TARGET FACEBOOK ACCOUNT 2** and other accounts, which includes identifying information for the account holders involved in the conversation and the date and time of messages sent in the conversation, but not the content of the conversation.

69. For example, **TARGET FACEBOOK ACCOUNT 2** was in communication with **TARGET FACEBOOK ACCOUNT 9**, screen name "Nabura Teariniman," referenced above, between October 8, 2017 and November 3, 2017. The following messages were exchanged:

| Author | Account | Sent |
|---|---|---|
| Nabura Teariniman | 100006226988117 (Target Facebook Account 9) | Sent 2017-10-08 23:16:23 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | Sent 2017-10-19 21:42:18 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | Sent 2017-10-19 21:42:57 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | Sent 2017-10-19 21:43:17 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | Sent 2017-10-19 21:43:29 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | Sent 2017-10-19 21:43:31 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | Sent 2017-10-19 21:43:45 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | Sent 2017-10-19 21:43:59 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | Sent 2017-10-19 21:44:04 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | Sent 2017-10-19 21:44:16 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | Sent 2017-10-19 21:44:19 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | Sent 2017-10-19 21:44:47 |
| Nabura Teariniman | 100006226988117 (Target Facebook Account 9) | Sent 2017-10-21 06:51:49 |

AFFIDAVIT OF SA ZITO - 23
2016R01231

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-380

| Author | Account | Sent |
|---|---|---|
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | Sent 2017-10-21 15:51:34 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | Sent 2017-10-21 15:51:40 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | Sent 2017-10-21 15:51:50 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | Sent 2017-10-21 15:52:33 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | Sent 2017-10-21 15:52:47 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | Sent 2017-10-21 15:52:59 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | Sent 2017-10-21 15:53:04 |
| Nabura Teariniman | 100006226988117 (Target Facebook Account 9) | Sent 2017-10-21 18:07:41 |
| Nabura Teariniman | 100006226988117 (Target Facebook Account 9) | Sent 2017-11-03 01:12:51 |
| Nabura Teariniman | 100006226988117 (Target Facebook Account 9) | Sent 2017-11-03 01:17:51 |

70.     As discussed above, based on my training, experience, knowledge of this investigation, including my knowledge that AHUMADA GARCES uses **TARGET FACEBOOK ACCOUNT 1** to communicate with TEARINIMAN using **TARGET FACEBOOK ACCOUNT 9**, based on the foregoing message exchange I believe AHUMADA GARCES also uses **TARGET FACEBOOK ACCOUNT 2** to communicate with TEARINIMAN using **TARGET FACEBOOK ACCOUNT 9** to discuss narcotics smuggling.

71.     In addition to the above message thread, **TARGET FACEBOOK ACCOUNT 2** was in communication with account 100011099495118, screen name "Tianuare Tairiri", from April 19, 2018 until September 10, 2019. During that time period, the following messages were exchanged:

| Author | Account | Sent |
|---|---|---|
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2018-04-19 20:59:35 |

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-380

| | | |
|---|---|---|
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2018-04-19 21:18:04 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2018-04-19 21:18:29 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2018-04-19 21:18:37 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2018-04-19 21:18:41 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2018-10-11 01:22:01 |
| Tianuare Tairiri | 100011099495118 | 2018-10-11 01:32:00 |
| Tianuare Tairiri | 100011099495118 | 2018-10-11 01:32:05 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2018-10-11 01:32:35 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2018-10-11 01:32:39 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2018-10-11 01:32:41 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2018-10-11 01:32:44 |
| Tianuare Tairiri | 100011099495118 | 2018-10-11 01:32:58 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2018-10-11 01:33:08 |
| Tianuare Tairiri | 100011099495118 | 2018-10-11 01:33:37 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2018-10-11 01:33:52 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2018-10-11 01:34:03 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2018-10-11 01:34:10 |
| Tianuare Tairiri | 100011099495118 | 2018-10-11 01:35:07 |
| Tianuare Tairiri | 100011099495118 | 2018-10-11 01:35:30 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2018-10-11 01:36:21 |
| Tianuare Tairiri | 100011099495118 | 2018-10-11 01:36:33 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2018-10-11 01:36:59 |
| Tianuare Tairiri | 100011099495118 | 2018-10-11 01:37:21 |
| Tianuare Tairiri | 100011099495118 | 2018-10-11 01:37:46 |
| Mariana Garces | 100014362298473 | 2018-10-11 01:38:06 |

AFFIDAVIT OF SA ZITO - 25

2016R01231

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-380

| | | (Target Facebook Account 2) | |
|---|---|---|---|
| | Mariana Garces | 100014362298473<br>(Target Facebook Account 2) | 2018-10-11 01:38:20 |
| | Mariana Garces | 100014362298473<br>(Target Facebook Account 2) | 2018-10-11 01:38:22 |
| | Tianuare Tariri | 100011099495118 | 2018-10-11 01:38:48 |
| | Tianuare Tariri | 100011099495118 | 2018-10-11 01:39:03 |
| | Tianuare Tariri | 100011099495118 | 2018-10-11 01:40:04 |
| | Mariana Garces | 100014362298473<br>(Target Facebook Account 2) | 2018-10-11 01:41:05 |
| | Mariana Garces | 100014362298473<br>(Target Facebook Account 2) | 2018-10-11 01:41:21 |
| | Mariana Garces | 100014362298473<br>(Target Facebook Account 2) | 2018-10-11 01:41:32 |
| | Mariana Garces | 100014362298473<br>(Target Facebook Account 2) | 2018-10-11 01:41:40 |
| | Tianuare Tariri | 100011099495118 | 2018-10-11 01:42:25 |
| | Mariana Garces | 100014362298473<br>(Target Facebook Account 2) | 2018-10-11 01:43:10 |
| | Mariana Garces | 100014362298473<br>(Target Facebook Account 2) | 2018-10-11 01:43:25 |
| | Tianuare Tariri | 100011099495118 | 2018-10-11 01:43:46 |
| | Mariana Garces | 100014362298473<br>(Target Facebook Account 2) | 2018-10-11 01:44:01 |
| | Tianuare Tariri | 100011099495118 | 2018-10-11 01:44:34 |
| | Tianuare Tariri | 100011099495118 | 2018-10-11 01:45:44 |
| | Mariana Garces | 100014362298473<br>(Target Facebook Account 2) | 2018-10-11 01:46:14 |
| | Mariana Garces | 100014362298473<br>(Target Facebook Account 2) | 2018-10-11 01:46:17 |
| | Tianuare Tariri | 100011099495118 | 2018-10-11 01:46:19 |
| | Mariana Garces | 100014362298473<br>(Target Facebook Account 2) | 2018-10-11 01:46:33 |
| | Mariana Garces | 100014362298473<br>(Target Facebook Account 2) | 2018-10-11 01:46:44 |
| | Mariana Garces | 100014362298473<br>(Target Facebook Account 2) | 2018-10-11 01:47:03 |
| | Mariana Garces | 100014362298473<br>(Target Facebook Account 2) | 2018-10-11 01:47:09 |
| | Mariana Garces | 100014362298473 | 2018-10-11 01:47:16 |

AFFIDAVIT OF SA ZITO - 26

2016R01231

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-380

| | (Target Facebook Account 2) | |
|---|---|---|
| Tianuare Tariri | 100011099495118 | 2018-10-11 01:47:20 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2018-10-11 01:47:32 |
| Tianuare Tariri | 100011099495118 | 2018-10-11 01:47:36 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2018-10-11 01:47:46 |
| Tianuare Tariri | 100011099495118 | 2018-10-11 01:47:58 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2018-10-11 01:48:45 |
| Tianuare Tariri | 100011099495118 | 2018-10-11 01:53:01 |
| Tianuare Tariri | 100011099495118 | 2018-10-11 01:53:23 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2018-10-11 01:53:30 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2018-10-11 01:53:32 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2018-10-11 01:53:36 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2018-10-11 01:53:46 |
| Tianuare Tariri | 100011099495118 | 2018-10-11 01:53:53 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2018-10-11 01:53:57 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2018-10-11 01:54:15 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2018-10-11 01:54:16 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2018-10-11 01:54:16 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2018-10-11 01:54:16 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2018-10-11 01:54:16 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2018-10-11 01:54:17 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2018-10-11 01:54:17 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2018-10-11 01:54:17 |
| Tianuare Tariri | 100011099495118 | 2018-10-11 01:54:28 |

AFFIDAVIT OF SA ZITO - 27

2016R01231

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-380

| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2018-10-27 21:27:53 |
|---|---|---|
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2018-10-27 21:28:05 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2018-10-27 21:28:23 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2018-10-27 21:28:33 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2018-10-27 21:28:41 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2018-10-27 21:28:49 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2018-10-27 21:28:57 |
| Tianuare Tariri | 100011099495118 | 2018-10-29 02:41:11 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2018-10-29 22:06:36 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2018-11-06 22:41:30 |
| Tianuare Tariri | 100011099495118 | 2018-11-06 22:42:49 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2018-11-06 22:43:14 |
| Tianuare Tariri | 100011099495118 | 2018-11-06 22:43:52 |
| Tianuare Tariri | 100011099495118 | 2018-12-10 01:06:44 |
| Tianuare Tariri | 100011099495118 | 2019-02-04 15:31:52 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2019-05-06 03:23:20 |
| Tianuare Tariri | 100011099495118 | 2019-05-11 07:54:57 |
| Tianuare Tariri | 100011099495118 | 2019-05-11 07:55:23 |
| Tianuare Tariri | 100011099495118 | 2019-05-11 07:55:30 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2019-05-23 00:22:23 |
| Tianuare Tariri | 100011099495118 | 2019-05-31 01:45:00 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2019-09-08 16:54:39 |
| Tianuare Tariri | 100011099495118 | 2019-09-10 12:51:13 |
| Mariana Garces | 100014362298473 (Target Facebook Account 2) | 2019-09-10 18:42:58 |

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-380

72. According to information received from Western Union, AHUMADA GARCES sent ten wire transfers to YURANIS AHUMADA GARCES ("Y. AHUMADA GARCES") between August 27, 2016 and June 10, 2017. Eight of the transfers originated in Panama. One was sent from Limon, Costa Rica, and one was sent from Tavernes de la Valldinga, Spain. All ten wires were received in Colombia. According to additional records obtained from Western Union, on December 24, 2016, Y. AHUMADA GARCES sent two wire transfers from Colombia to Tarawa, Kiribati. Both wires originated as Colombian Pesos with a USD value of $1,020.43 and were received in Kiribati as $1,388.32 Australian Dollars (AUD). One of those wire transfers was sent to TARIRI TIANUARE ("TIANUARE"). TIANUARE has entered the U.S. on numerous occasions, and his travel patterns appear to be consistent with those of a professional mariner. TIANUARE was previously identified by law enforcement as one of the Kiribati mariners on the **TARGET FACEBOOK ACCOUNT 1** friend list.

73. Based on my training, experience, and knowledge of this investigation, including information provided by the CHS discussed above, I believe AHUMADA GARCES uses Y. AHUMADA GARCES as a third party intermediary to send payment to mariners who smuggle narcotics on her behalf. I believe AHUMADA GARCES uses third party intermediaries such as Y. AHUMADA GARCES to create a layer of separation between her and the individuals involved in her narcotics smuggling conspiracy as a means of avoiding detection by law enforcement.

74. Furthermore, according to the records provided by the PROVIDER in response to Order MJ19-320, **TARGET FACEBOOK ACCOUNT 2** was in communication with a total of 88 other accounts during the timeframe for which records were provided. Five of the accounts were not able to be located through open source searches. Of the 83 accounts **TARGET FACEBOOK ACCOUNT 2** was in contact with that were able to be located, 77 of those accounts appear, based on publicly

AFFIDAVIT OF SA ZITO - 29

2016R01231

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-380

1  viewable account information, to be used by men from the Republic of Kiribati, men

2  employed in the maritime industry, or both. One of the 77 accounts appeared to used by a

3  female from the Republic of Kiribati, and two appear to be associated with Panamanian

4  businesses. Based on my training, experience, knowledge of this investigation, and her

5  use of **TARGET FACEBOOK ACCOUNT 2** to communicate with TEARINIMAN and

6  TIANUARE as described above, I believe that AHUMADA GARCES also uses

7  **TARGET FACEBOOK ACCOUNT 2** as a means to communicate with others

8  employed in the maritime industry, particularly Kiribati nationals, and to recruit them

9  into her narcotics smuggling organization.

10

11  **INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

12  75.    I anticipate executing this warrant under the Electronic Communications

13  Privacy Act, in particular Title 18, United States Code, Sections 2703(a), 2703(b)(1)(A)

14  and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the

15  government copies of the records and other information (including the content of

16  communications) particularly described in Section I of Attachment B.  Upon receipt of

17  the information described in Section I of Attachment B, government-authorized persons

18  will review that information to locate the items described in Section II of Attachment B.

19  76.    As indicated in the Application and Order for Non Disclosure that

20  accompany this Affidavit, the government requests, pursuant to the preclusion of notice

21  provisions of Title 18, United States Code, Section 2705(b), that Facebook be ordered not

22  to notify any person (including the subscriber or customer to which the materials relate)

23  of the existence of this warrant for such period as the Court deems appropriate, not to

24  exceed one year.  The government submits that such an order is justified because

25  notification of the existence of this Order would seriously jeopardize the ongoing

26  investigation.  Such a disclosure would give the subscriber an opportunity to destroy

27  evidence, change patterns of behavior, notify confederates, or flee from prosecution.

28

AFFIDAVIT OF SA ZITO - 30

2016R01231

Notifying our targets of the existence of this investigation will likely cause them to destroy evidence, flee the jurisdiction, or alter their methods, thus making it more difficult to dismantle the organization effectively. Notice also could put the CS, UC, and agents working with them in danger. For all the same reasons, I am requesting that the Court allow the government to delay notification of this warrant for the same period, not to exceed one year.

77.     It is further respectfully requested that this Court issue an order sealing all papers submitted in support of this application, including the application and search warrant, until further order of the Court, for a period not to exceed one year. I believe that sealing this document is necessary because the items and information to be searched and seized are relevant to an ongoing investigation. Premature disclosure of the contents of this Affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

78.     Analyzing the data contained in the forensic copy may require special technical skills, equipment, and software. It could also be very time consuming. Searching by keywords, for example, can yield thousands of "hits," each of which must then be reviewed in context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant "hit" does not end the review process. Keywords used originally need to be modified continuously, based on interim results. Certain file formats, moreover, do not lend themselves to keyword searches, as keywords, search text, and many common email, database and spreadsheet applications do not store data as searchable text. The data may be saved, instead, in proprietary non-text format. And, as the volume of storage allotted by service providers increases, the time it takes to properly analyze recovered data increases, as well. Consistent with the foregoing, searching the recovered data for the information subject to seizure pursuant to this warrant may require a range of data analysis techniques and may take weeks or even

AFFIDAVIT OF SA ZITO - 31

2016R01231

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-380

months. All forensic analysis of the data will employ only those search protocols and methodologies reasonably designed to identify and seize the items identified in Section II of Attachment B to the warrant.

79.     Based on my training and experience, and the training and experience of other agents with whom I have communicated, it is necessary to review and seize a variety of electronic communications, chat logs and documents, that identify any users of the subject account and messages sent or received in temporal proximity to incriminating messages that provide context to the incriminating communications.

## CONCLUSION

80.     Based on the forgoing, I respectfully request that the Court issue the proposed search warrant. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that - has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). Pursuant to 18 U.S.C. § 2703(g), the government will execute the warrant by serving the warrant the PROVIDER. Because the warrant will be served on the PROVIDER, who will then compile the requested records and data, reasonable cause exists to permit the execution of the requested warrants at any time in the day or night. Accordingly, by this Affidavit and Warrant, I seek authority for the government to search all of the items specified in Section I, Attachment B to the Warrant, and specifically to seize all of the data, documents and records that are identified in Section II to Attachment B.

81.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 90 days after the collection authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-380

providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the person using the SUBJECT ACCOUNTS would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2). Additionally, if necessary, I may request that the Court, upon a showing of good cause, order a further delay of the time permitted to serve notice, if necessary to protect the safety of any individual, avoid flight or destruction of evidence, and ensure that the investigation is not jeopardized prior to its completion.

82.    I further request that the Court order that all papers in support of this application, including the Affidavit and Search Warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation. This application is presented to the Court via by reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41(d)(3).

MATTHEW ZITO, Affiant
Special Agent, Federal Bureau of Investigation

The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone on 22nd day of April, 2020.

THE HONORABLE BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

AFFIDAVIT OF SA ZITO - 33
2016R01231

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# ATTACHMENT A

## Property to Be Searched

This warrant applies to information associated with the following Facebook accounts:

- Account number 100012398678974 ("TARGET FACEBOOK ACCOUNT #1"), believed to be used by MARELVIS JACQUELIN AHUMADA GARCES ("AHUMADA GARCES");

- Account number 100014362298473 ("TARGET FACEBOOK ACCOUNT #2"), believed to be used by AHUMADA GARCES;

- Account number 100007507727611 ("TARGET FACEBOOK ACCOUNT #8"), believed to be used by REFUA KABUTA; and

- Account number 100006226988117 ("TARGET FACEBOOK ACCOUNT #9"), believed to be used by NABURA TEARINIMAN (collectively referred to as the "SUBJECT ACCOUNTS")

that is stored at a premises owned, maintained, controlled, or operated by Facebook, a social networking company headquartered in Menlo Park, California.

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-380

**ATTACHMENT B**

**Particular Things to be Seized**

**I. Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under Title 18, United States Code, Section 2703(f), Facebook is required to disclose the following information to the government for the user IDs listed in Attachment A (the "SUBJECT ACCOUNTS"):

    A. The following information about the customer or subscriber of the SUBJECT ACCOUNTS:

        (a) All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

        (b) All activity logs for the SUBJECT ACCOUNTS and all other documents showing the user's posts and other Facebook activities;

        (c) All photos and videos in their original format, including EXIF information (metadata), uploaded by that user ID and all photos and videos in their original format, including EXIF information (metadata), uploaded by any user that have that user tagged in them;

        (d) All other records of communications and messages made or received by the user, including all private messages, chat history, calling history, and pending "Friend" requests;

        (e) All "check ins" and other location information;

        (f) All IP logs, including all records of the IP addresses that logged into the SUBJECT ACCOUNTS;

1  (g) All past and present lists of friends created by the SUBJECT ACCOUNTS;

2  (h) All records of Facebook searches performed by the SUBJECT

3    ACCOUNTS;

4  (i) The length of service (including start date);

5  (j) The means and source of payment for such service (including any credit

6    card or bank account number) and billing records;

7  (k) All records pertaining to communications between Facebook and any

8    person regarding the user or the user's Facebook account, including

9    contacts with support services and records of actions taken;

10  (l) Names (including subscriber names, Facebook user IDs, and screen

11    names);

12  (m) Addresses (including mailing addresses, residential addresses, business

13    addresses, and e-mail addresses);

14  (n) Local and long distance telephone connection records;

15  (o) Linked accounts; and

16  (p) Telephone or instrument numbers or identities (including MAC addresses).

17 B. All records and other information relating to the SUBJECT ACCOUNTS,

18  including:

19  (a) Records of user activity for each connection activity for each connection

20    made to or from the SUBJECT ACCOUNTS, including log files;

21    messaging logs; the date, time, length, and method of connections; data

22    transfer volume; user names; and source and destination of Internet

23    Protocol addresses;

24  (b) Information about each communication sent or received by the SUBJECT

25    ACCOUNTS, including the date and time of the communication, the

26    method of the communication (such as source and destination email

27    addresses, IP addresses, and telephone numbers); and

28

AFFIDAVIT OF SA ZITO - 36
2016R01231

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-380

1    (c)    Records of any Facebook accounts that are linked to the SUBJECT
2           ACCOUNTS by machine cookies (meaning all Facebook user IDs that
3           logged into Facebook by the same machine or device as the SUBJECT
4           ACCOUNTS).

5    **II.    Information to be seized by the government**

6    All information described above in Section I that constituted evidence, fruits, or
7    instrumentailities of violations of Title 21, United States Code, Sections 841(a)(1), 846
8    (possession with intent to distribute and/or distribution of controlled substances and
9    conspiracy to commit said offenses) 960 and 961 (importation of controlled substances
10   and conspiray), as well as all information pertinent to the identity of the user[s] of the
11   SUBJECT ACCOUNTS and the location of said users including:

12       (a) any and all Wall Posts, private messages, status updates, chat history, friend
13           requests, postings, photographs, or any other information, records, or other
14           material or information that relates to drug trafficking, or activity related to
15           or in furtherance of drug trafficking;

16       (b) any and all IP logs, including all records of the IP addresses that logged
17           into the account, and the dates and times such logins occurred, as well as
18           any other connection information;

19       (c) records relating to who created, used, or communicated with the user ID,
20           including records about their identities and whereabouts;

21       (d) financial records and information, including but not limited to money
22           transfers or wires;

23       (e) information identifying the names, location, or other contact information of
24           people in contact with suspected drug traffickers;

25       (f) Any content including e-mails, messages, texts, photographs (including
26           metadata), videos (including metadata), visual images, documents,
27           spreadsheets, address lists, contact lists or communications of any type
28           which could be used to identify the user and or their location.

AFFIDAVIT OF SA ZITO - 37
2016R01231

(g) Records relating to who created, used, or communicated with the user ID, including records about their identities and whereabouts;

(h) any information, records, or other material relevant to the whereabouts of the user of each SUBJECT ACCOUNT;

(i) All subscriber records associated with the SUBJECT ACCOUNTS, including name, address, local and long distance telephone connection records, or records of session times and durations, length of service (including start date) and types of service utilized, telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address, and means and source of payment for such service including any credit card or bank account number;

(j) Any and all other log records, including IP address captures, associated with the SUBJECT ACCOUNTS; and

(k) Any records of communications between Facebook and any person about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users about the SUBJECT ACCOUNT.  This is to include records of contacts between the subscriber and the provider's support services, as well as records of any actions taken by the provider or subscriber as a result of the communications.

AFFIDAVIT OF SA ZITO - 38
2016R01231

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-380

**CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)**

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Facebook, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Facebook. The attached records consist of _____ [GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]. I further state that:

    a.    all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Facebook, and they were made by Facebook as a regular practice; and

    b.    such records were generated by Facebook's electronic process or system that produces an accurate result, to wit:

        1.    the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Facebook in a manner to ensure that they are true duplicates of the original records; and

        2.    the process or system is regularly verified by Facebook, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

Date:_____

Signature:_____

AFFIDAVIT OF SA ZITO - 39
2016R01231

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

AFFIDAVIT OF SA ZITO - 40

2016R01231

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-380